AO 102 (01/09) Application for a Tracking Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

| | |
|---|---|
| In the Matter of the Tracking of<br>*(Identify the person to be tracked or describe<br>the object or property to be used for tracking)*<br>a silver 2012 Nissan Rogue bearing Ohio license<br>plate number ▮▮▮▮▮ | ) ) ) ) ) ) Case No. 3:24-mj-00266 |

### APPLICATION FOR A TRACKING WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or attorney for the government, have reason to believe that the person, property, or object described above has been and likely will continue to be involved in one or more violations of __21__ U.S.C. § 841(a)(1)/846. Therefore, in furtherance of a criminal investigation, I request authority to install and use a tracking device or use the tracking capabilities of the property or object described above to determine location. The application is based on the facts set forth on the attached sheet.

- ☑ The person, property, or object is located in this district.
- ☐ The person, property, or object is not now located in this district, but will be at the time of execution.
- ☐ The activity in this district relates to domestic or international terrorism.
- ☐ Other:

The tracking will likely reveal these bases for the warrant under Fed. R. Crim. P. 41(c): *(check one or more)*

- ☑ evidence of a crime;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☐ a person to be arrested or a person who is unlawfully restrained.

☑ I further request, for purposes of installing, maintaining or removing the tracking device, authority to enter the following vehicle or private property, or both:
a silver 2012 Nissan Rogue bearing Ohio license plate number ▮▮▮▮▮

☑ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Jessica Lampe*
Applicant's signature

Jessica Lampe, SA of the DEA
Applicant's printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on:

Date: 5/6/24

City and state: Dayton, Ohio

Peter B. Silvain, Jr.
United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE TRACKING OF THE 2012 NISSAN ROGUE, LICENSE PLATE NUMBER ▮▮▮, ▮▮▮ | Case No. 3:24-mj-00266 <br><br> **Filed Under Seal** |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Special Agent Jessica Lampe, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3117 to authorize the installation and monitoring of a tracking device on a silver 2012 Nissan Rogue bearing Ohio license plate number ▮▮▮, vehicle identification number ▮▮▮, and registered to ▮▮▮ ("the SUBJECT VEHICLE"). Based on the facts set forth in this affidavit, I believe that the SUBJECT VEHICLE is presently being used in furtherance of violations of 21 U.S.C. §§ 846 and 841(a)(1) (possession with the intent to distribute and to distribute a controlled substance and conspiracy to commit the same) and that there is probable cause to believe that the installation of a tracking device on the SUBJECT VEHICLE and use of the tracking device will lead to evidence, fruits, and instrumentalities of the aforementioned crimes as well as to the identification of individuals who are engaged in the commission of those and related crimes.

2. I am an "Investigative or Law Enforcement Officer" of the United States Drug Enforcement Administration ("DEA") within the meaning of Title 21, United States Code,

Section 878. As such, I am an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 21, United States Code, Section 878.

3. I have been employed as a Special Agent of the DEA since June 2022, and I am currently assigned to the DEA Dayton Resident Office (DRO). In July 2022, I reported to DEA Basic Agent Training in Quantico, Virginia. In November 2022, I completed the 17-week Basic Agent Training Academy at the DEA Justice Training Center in Quantico, Virginia. While attending Basic Agent Training, I received instruction on topics including narcotics identification, surveillance techniques, methods of operation of narcotics traffickers, law, evidence handling, undercover operations, current trends/patterns involving the distribution of narcotics, as well as other areas of drug enforcement. Prior to my employment with the DEA, I served as a Probation Officer in various counties in Ohio as well as the United States Probation Department from February 2012 to October 2021.

4. During my career with the DEA, I have participated in controlled substance investigations involving cocaine, methamphetamine, and fentanyl. I have conducted physical surveillance and monitored/reviewed recorded conversations of drug traffickers. I have participated in Title III investigations by monitoring lines, supervising monitors, and conducting surveillance to substantiate the Title III interceptions. During the course of these interceptions, I have become familiar with coded terminology used by drug trafficking organizations to disguise their illegal activities and the manner in which they conduct these illegal activities. Through my training and experience, including on-the-job discussions with other law enforcement agents and cooperating suspects, I am familiar with the activities of drug smugglers and drug trafficking distribution networks including the use of communication

facilities such as the United States Post Office and FedEx to ship both narcotics and United States Currency associated with the narcotics trafficking activities. I have interviewed witnesses, subjects, and defendants involved in and/or arrested for drug violations, and have participated in several joint interagency federal and state investigations

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

### A. Overview of the Investigation

6. The United States, including the DEA, is conducting a criminal investigation of a Drug Trafficking Organization ("DTO") that distributes fentanyl in southern Ohio. Through this investigation, DEA has identified ▉▉▉▉ as a member of this DTO. DEA further has learned that ▉▉▉▉ is using a silver 2012 Nissan Rogue, bearing Ohio license plate number ▉▉▉▉ and vehicle identification number ▉▉▉▉ ("**SUBJECT VEHICLE**"), to further his drug activities.

7. During early 2024, I reviewed ▉▉▉▉ criminal history and learned that he has multiple prior drug-related convictions in the state of Ohio including but not limited to: possession of cocaine (2004); possession of heroin (2006); trafficking in heroin (2009); and trafficking in heroin (10-unit to 50-unit doses/vicinity of school or juvenile) (2016). During 2020, ▉▉▉▉ was convicted in the United States District Court for the Southern District of Ohio of possessing with intent to distribute 40 grams or more of a mixture or substance containing a detectable amount of fentanyl. Sentenced to 60 months of imprisonment on that

3

federal case, ▇ was released from the Bureau of Prisons during August 2022. He currently remains on supervised release with this Court.

8. During January 2024, DEA linked ▇ to the distribution of fentanyl to a person identified herein as CD-1. During mid-January 2024, DEA performed surveillance at ▇ then residence, ▇ area. While there, law enforcement saw CD-1 arrive in a vehicle and walked up to the residence. CD-1 stood outside of the house for a brief time before returning to their car and driving away. DEA followed CD-1 from ▇ residence, and law enforcement ultimately performed a traffic stop on CD-1's vehicle. (Notably, between the traffic stop and CD-1's departure from ▇ home, CD-1 did not make any other stops). During the encounter with CD-1, law enforcement recovered bulk amounts of fentanyl from CD-1's vehicle. Law enforcement Mirandized CD-1, and CD-1 agreed to speak with police. During their conversation, CD-1 confirmed that the fentanyl came from ▇ and that ▇ had additional drugs currently in his possession. CD-1 advised that CD-1 had purchased fentanyl from ▇ on three or four previous occasions and that ▇ generally kept drugs at ▇' home. Law enforcement has been able to corroborate statements that CD-1 made and therefore believe CD-1 to be credible and reliable. It should be noted that CD-1 does have a criminal history, including burglary, theft, and forgery.

9. During late February 2024, law enforcement stopped in the Dayton, Ohio, area a person identified herein as CD-2; CD-2 was in possession of bulk amounts of fentanyl. At that time, CD-2, who has a lengthy criminal record, advised law enforcement that the fentanyl was low quality and that CD-2 had planned to take the drugs to ▇ for ▇ to add cut to it to increase its potency. For reasons detailed more fully below, law enforcement has been able to corroborate information from CD-2 and therefore has concluded that CD-2 is credible.

4

10. On or about March 19, 2024, an investigator from the DEA spoke with a person identified herein as CS-1. CS-1 has provided information to law enforcement for over a year and that information has led to arrests as well as the seizure of drugs and other contraband. While CS-1 provided information for financial consideration and has a prior felony conviction, DEA deems CS-1 credible and reliable. CS-1 explained that ▓▓▓ currently was trafficking kilogram quantities of fentanyl in the Dayton area. According to CS-1, ▓▓▓ often held up to 30,000 fentanyl pills and multiple fentanyl brick or kilograms.

11. On or about March 20, 2024, DEA performed surveillance of ▓▓▓, including at his new residence of ▓▓▓ area. During these observations, DEA saw ▓▓▓ leave the residence, enter the driver's seat of a Buick LaCrosse, and then drive away. While following ▓▓▓ in the Buick, DEA saw him meet with several known drug traffickers in the Dayton area.

12. During mid-April 2024, law enforcement again interviewed CD-2. CD-2 wished to speak with law enforcement for judicial consideration. Law enforcement was able to corroborate CD-2's information and considers him credible.

    a. CD-2 advised that ▓▓▓ frequently sold drugs from Summit Square Apartments in Dayton, Ohio. (Other information known to law enforcement – including surveillance – previously had placed ▓▓▓ drug operation in this area). CD-2 stated that ▓▓▓ girlfriend ▓▓▓, would arrange these apartments for him, often asking her female acquittances to use their homes temporarily for drug trafficking activity. According to CD-2, ▓▓▓ used the apartments for mixing fentanyl and pressing pills. CD-2 reported that ▓▓▓ often mixed fentanyl for other drug traffickers, charging hundreds of dollars for this

5

service. CD-2 indicated that ▇ commonly moved apartments every 30 days to avoid detection by law enforcement.

   b.   CD-2 also spoke of an incident that caused ▇ to have a dispute with another drug trafficker. Specifically, CD-2 advised that one of ▇ customers had been stopped by police earlier in the year and that the customer had told on ▇. Given the information that CD-2 relayed – including where the customer lived and the timing of the stop – I believe that CD-2 was referring to the incident involving CD-1.

   c.   CD-2 also gave consent to review CD-2's cellular telephone. CD-2's contact list contained a known number for ▇ CD-2 also reported a current number for ▇ as well.

   13.   On or about April 26, 2024, law enforcement performed surveillance at ▇ residence on Main Street and observed him using a red 2012 Nissan Rogue, bearing Ohio license plate number ▇ and vehicle identification number ▇ ("**SUBJECT VEHICLE**"). During these observations, DEA saw ▇ come and go from the Main Street residence several times while in the **SUBJECT VEHICLE**. On one occasion, ▇ was in the passenger seat of the **SUBJECT VEHICLE**. On another time, ▇ was driving the **SUBJECT VEHICLE**. Notably, ▇ did not park the **SUBJECT VEHICLE** in front of his home but rather left it in the parking lot of market a short walk from the residence. Based on my training and experience as well as my discussions with other agents, I know that individuals engaged in illegal activity often attempt to physically distance their vehicles from their residence to prevent law enforcement from associating the two together.

   14.   After observing ▇ in the **SUBJECT VEHICLE**, DEA queried law enforcement databases concerning its registration information. The **SUBJECT VEHICLE**

returned to Precious Taste. Law enforcement also reviewed law enforcement databases and learned that plate readers in the area captured the **SUBJECT VEHICLE** on an almost daily basis. In comparison, the Buick Lacrosse in which agents observed ▓▓▓ during March 2024 has been captured on local plate readers only twice during April 2024. Based on this information, I believe that ▓▓▓ currently has stopped driving the Buick and uses in its place the **SUBJECT VEHICLE.**

15. On or about April 30, 2024, DEA again performed surveillance at ▓▓▓ Main Street home. Once again, ▓▓▓ arrived at the residence driving the **SUBJECT VEHICLE**. He stopped outside the home, and his girlfriend, ▓▓▓, exited the **SUBJECT VEHICLE**. She briefly entered the home and returned to the **SUBJECT VEHICLE**. ▓▓▓ then drove away in the **SUBJECT VEHICLE**.

16. During late April 2024/early May 2024, DEA spoke with CS-1. CS-1 advised that CS-1 recently had observed ▓▓▓ driving a Nissan Rogue. CS-1 also explained that ▓▓▓ (who law enforcement identified as the registered owner of the **SUBJECT VEHICLE**) was the sister of ▓▓▓, ▓▓▓' girlfriend. According to CS-1, ▓▓▓ sold small amounts of methamphetamine and pills on behalf of ▓▓▓. Based on my training and experience, I know that drug traffickers frequently place their cars in the names of friends and family members to disguise the vehicle's association with them. ▓▓▓ use of the SUBJECT VEHICLE and the manner in which it is registered (i.e., in the name of his girlfriend's sister) proves consistent with that practice.

17. In sum, I believe that ▓▓▓ currently is involved in drug trafficking activity and that he uses the **SUBJECT VEHICLE**. Tracking ▓▓▓ movements through instillation of a GPS tracker on the **SUBJECT VEHICLE** will help investigators identify his pattern of travel,

7

including locations where he frequents. Given the information that ▇▇▇ often moves the location where he stores and processes drugs, precisely monitoring his movements will assist law enforcement identify his stash houses as well as the identities of confederates. I believe that continuing to track the location of the **SUBJECT VEHICLE** will yield additional evidence of ▇▇▇ illegal activities. As detailed above, I also know that the **SUBJECT VEHICLE** is presently within the Southern District of Ohio.

18. To ensure the safety of the executing officer(s) and to avoid premature disclosure of the investigation, it is requested that the court authorize maintenance and removal of the tracking device during both daytime and nighttime hours.

19. In the event the Court grants this application, there will be periodic monitoring of the tracking device during both daytime and nighttime hours for a period not to exceed 45 days following issuance of the warrant. The tracking device may produce signals from inside private garages or other such locations not open to the public or visual surveillance.

## AUTHORIZATION REQUEST

20. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3117, that authorizes members of DEA or their authorized representatives, including but not limited to other law enforcement agents and technicians assisting in the above-described investigation, to install a tracking device on the **SUBJECT VEHICLE** within Southern District of Ohio within 10 days of the issuance of the proposed warrant, to maintain, repair, and/or replace the tracking device as necessary, and to remove the tracking device from the **SUBJECT VEHICLE** after the use of the tracking device has ended; to install, maintain, and remove the tracking device during both daytime and nighttime hours and/or move the **SUBJECT VEHICLE** to effect the

installation, repair, replacement, and removal of the tracking device; and to monitor the tracking device for a period of 45 days following the issuance of the warrant, including when the tracking device is inside private garages and other locations not open to the public or visual surveillance, both within and outside the Southern District of Ohio.

21. In accordance with 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), I further request that the delayed notification of the execution of the warrant after the end of the authorized period of tracking (including any extensions thereof) because there is reasonable cause to believe that providing immediate notification may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice would seriously jeopardize the ongoing investigation by prematurely revealing its existence and giving suspects an opportunity to flee from prosecution, destroy or tamper with evidence, intimidate potential witnesses, notify confederates, and change patterns of behavior.

22. I further request that the Court seal the warrant and the affidavit and application in support thereof, except that copies of the warrant in full or redacted form may be maintained by the United States Attorney's Office and may be served on Special Agents and other investigative and law enforcement officers of the DEA, federally deputized state and local law

enforcement officers, and other government and contract personnel acting under the supervision of such investigative or law enforcement officers, as necessary to effectuate the warrant. These documents pertain to and discuss an ongoing criminal investigation that is neither public nor known to all the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize the investigation. Sealing these documents will also better ensure the safety of agents and others.

Respectfully submitted,

*Jessica Lampe*

Jessica Lampe
Special Agent
Drug Enforcement Administration

Subscribed and sworn to via reliable electronic means on _____May 6_____, 2024

Peter B. Silvain, Jr.
United States Magistrate Judge

10